UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KATHLEEN MORIARTY,

                Plaintiff,

    v.

PORT OF SEATTLE,

                Defendant.

CASE NO. 2:23-cv-01209-TL

ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS

This matter is before the Court on Defendant's Motion for Judgment on the Pleadings. Dkt. No. 28. Having considered Plaintiff's response (Dkt. No. 30), Defendant's reply (Dkt. No. 31), and the relevant record, and finding oral argument unnecessary, *see* LCR 7(b)(4), the Court GRANTS Defendant's motion.

## I.    BACKGROUND

Plaintiff Kathleen Moriarty was employed with Defendant Port of Seattle ("the Port") from June 2003 to November 2021, when she was terminated for failure to comply with Defendant's vaccination requirement. Dkt. No. 24 ¶ 29; *id.* at 72–73 (Appx. O-1). At the time of

her termination, Plaintiff worked as a Piledriver General Crew Chief in Defendant's Marine Maintenance division. *Id.* ¶¶ 34, 43; *id.* at 64 (Appx. J-2). During her tenure with Defendant, Plaintiff received a variety of awards in recognition of her work, particularly with respect to inclusion and diversity in the skilled trades, and served on a number of boards as a representative for Defendant. *Id.* ¶¶ 33–41.

During the COVID-19 outbreak in Washington State,[1] Plaintiff was deemed an essential worker by Defendant and continued to report to work onsite between March 2020 and November 2021. Dkt. No. 24 ¶¶ 42–43.

**A.   Defendant's Mask Policy and Plaintiff's Related Requests for Accommodations**

Around September 2020, in connection with the ongoing COVID-19 outbreak in Washington State, a Port employee informed Plaintiff that she was required to wear a face mask when she was not alone in her office. Dkt. No. 24 ¶ 44.

Plaintiff told Defendant's employee that "wearing a face mask impaired [her] breathing," causing Plaintiff to "feel lightheaded," "feel anxiety," and "have difficulty concentrating." *Id.* ¶ 45. Defendant's employee reiterated to Plaintiff that she was required to wear a mask, and Plaintiff alleges that Defendant's employee additionally told her that wearing a face mask "did not cause difficulty in breathing, anxiety, or lightheadedness." *Id.* ¶ 46.

**B.   Defendant's Vaccination Policy and Plaintiff's Related Requests for Accommodations**

In connection with the Delta wave of COVID-19, Defendant imposed a vaccination requirement for its employees on September 14, 2021 ("HR-34"). Dkt. No. 24 ¶ 47; *id.* at 64 (Appx. J-2). Employees were able to request an exemption or accommodation from HR-34 on

---

[1] *See* Off. of Wash. State Governor, Proclamation by the Governor Amending Proclamation 20-05, "Stay Home – Stay Healthy" (2020).

1  religious grounds. *Id.* at 56 (Appx. F-1). Defendant indicated to employees that it would

2  "carefully review all requests for a religious accommodation," but that it could not guarantee

3  approval of such requests for accommodation. *Id.* Specifically, Defendant noted that requests for

4  a religious exemption would not be granted where it created an undue hardship—meaning that it

5  imposed more than a minimal cost or burden on operations—or where it posed a direct threat to

6  the health and safety of others. *Id.*

7         Shortly after the imposition of HR-34, Plaintiff contacted her Labor Manager and the

8  Director of Marine Maintenance to inform them of "severe emotional distress she was

9  experiencing as a result of [HR-34]." *Id.* ¶ 51; *see also id.* at 53 (Appx. C-1). She indicated to

10  Defendant that she was "working on [her] religious exemption request," and that she had also

11  considered a medical exemption request. *Id.* at 53 (Appx. C-1); *see also id.* ("I wish that I could

12  have a medical back-up to this but when I visited my physician to discuss this she informed me

13  that she's been 'instructed' not to write any letters regarding Covid.").

14         On November 1, 2021, Plaintiff filed a request for religious exemption from HR-34. *Id.*

15  ¶ 53; *see also id.* at 56–59 (Appx. F). On November 8, 2021, Defendant informed Plaintiff of its

16  decision that it was unable to accommodate Plaintiff's request for religious exemption from HR-

17  34. *Id.* ¶ 57; *see also id.* at 63–64 (Appx. J). In considering Plaintiff's religious exemption

18  request and additional information provided by her manager, Defendant found that "granting

19  [Plaintiff's] accommodation request would pose an undue hardship on the Port by negatively

20  impacting workplace safety and posing a threat to the health and safety of employees and their

21  families, the community, visitors, and others who spend time in Port facilities." *Id.* at 64

22  (Appx. J-2). Defendant did not indicate to Plaintiff what information from her manager it

23  considered when making this determination, or what accommodations it considered and rejected.

24  *See id.* ¶¶ 58–60.

On November 8, 2021, Plaintiff was served with a Notice of Intent to Separate for Non-Disciplinary Reasons, indicating that Defendant would terminate Plaintiff if she was unable to comply with HR-34 by November 15, 2021. *Id.* ¶ 61; *see also id.* at 65–66 (Appx. K). The Notice also indicated that Plaintiff would be able to meet with Dan Fitzgerald, her manager, on November 10 in order to "provide any information [she wished] the Port to consider before [she was] separated from employment and allow [her] the opportunity to ask any questions [she] may have." *Id.* at 65 (Appx. K-1). It is unclear from the record whether this meeting ever occurred.

On November 15, 2021, Plaintiff received a notice that Defendant would be placing her on paid administrative leave effective November 16, 2021, pending a decision on her proposed separation from employment. *Id.* at 67 (Appx. L-1). The notice also informed Plaintiff that she was entitled to a Loudermill meeting[2] "to provide any information [she wished] to be considered before a decision [was] made on this proposal to separate [her] from employment," to be conducted on November 16. *Id.* Plaintiff was also permitted to respond in writing. *Id.* at 68 (Appx. L-2).

In preparation for her Loudermill meeting, Plaintiff emailed a number of Port employees "explaining how the safety protocols that had been in place since March of 2020 had successfully kept her free from [COVID-19] and suggested several ways the Port [] could provide accommodations for her." *Id.* ¶ 64; *see also id.* at 69 (Appx. M-1). In particular, Plaintiff

---

[2] "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (internal quotation omitted). Therefore, due process requires a hearing in advance of termination. *Matthews v. Harney Cnty., Or., Sch. Dist. No. 4*, 819 F.2d 889, 892 (9th Cir. 1987); *see also Caraway v. Town of Columbus*, 765 F. App'x 374 (9th Cir. 2019) ("To meet this requirement, the state must provide pre-termination notice with an explanation of its evidence, and an opportunity for the employee facing discharge to respond, either orally or in writing."). This pre-disciplinary meeting is referred to as a "Loudermill" meeting or hearing. *Marable v. Nitchman*, 511 F.3d 924, 927 (9th Cir. 2007).

1   cited that her shop practiced good hygiene, stayed distanced from each other and other Port

2   employees, wore masks, did not ride in vehicles together, and did not enter Plaintiff's office,

3   including by changing how requests came through the office and how keys were distributed in

4   order to limit non-carpenters from visiting the shop. *Id.* at 69 (Appx. M-1). Plaintiff noted that

5   her crew had "not had a single person . . . get sick while at work." *Id.*

6       On November 16, 2021, Plaintiff's Loudermill meeting was held with Plaintiff and a

7   number of other Port employees. *Id.* ¶ 67. In that meeting, Port representatives stated that they

8   would not discuss accommodations with Plaintiff, but only intended to review Plaintiff's non-

9   compliance with HR-34. *Id.* ¶ 69. At the conclusion of the meeting, Port representatives

10  informed Plaintiff that they would make a decision regarding Plaintiff's continued employment

11  within the next few days. *Id.* ¶ 78. Plaintiff was terminated on November 17, 2021. *Id.* ¶ 79.

12  **C.      Procedural History**

13      On May 9, 2022, Plaintiff filed a discrimination charge against Defendant with the Equal

14  Employment Opportunity Commission ("EEOC"). Dkt. No. 24 ¶ 16; Dkt. No. 29-1 at 34–35. In

15  this charge, Plaintiff alleged that she had been discriminated against because of her religious

16  beliefs when Defendant denied her request for a religious accommodation to HR-34 and

17  terminated her employment. Dkt. No. 29-1 at 34–35. On March 28, 2023, the EEOC dismissed

18  Plaintiff's charge and provided Plaintiff of a notice of her right to sue within ninety days of her

19  receipt of the notice. Dkt. No. 24 ¶ 17; Dkt. No. 29-1 at 38.

20      On June 26, 2023, Plaintiff filed a complaint in King County Superior Court, asserting

21  claims under Washington's Law Against Discrimination and Title VII of the Civil Rights Act of

22  1964. Dkt. No. 1-1. Defendant timely removed the case to federal court. Dkt. No. 1. In January

23  2024, Plaintiff filed an amended complaint including claims for violation of the Free Exercise

24  Clause, retaliation in violation of the First Amendment, violation of the Americans with

1   Disabilities Act, discrimination under Title VII of the Civil Rights Act of 1964, breach of

2   contract, tortious interference with contract, violation of the Fourteenth Amendment's Procedural

3   Due Process Clause, violation of the Equal Protection Clause, conspiracy to deprive rights under

4   42 U.S.C. § 1985(3), and conspiracy to obstruct justice under 42 U.S.C. § 1985(2). *See* Dkt. No.

5   24 at 28–46.

6         Defendant now moves for judgment on eight of Plaintiff's claims pursuant to Rule 12(c).[3]

7                              **II.   LEGAL STANDARD**

8         "After the pleadings are closed—but early enough not to delay trial—a party may move

9   for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper

10  when the moving party clearly establishes on the face of the pleadings that no material issue of

11  fact remains to be resolved and that it is entitled to judgment as a matter of law." *Point Ruston,*

12  *LLC v. Pac. Nw. Reg'l Council of the United Broth. of Carpenters & Joinders of Am.*, 658 F.

13  Supp. 2d 1266, 1273 (W.D. Wash. 2009) (quoting *Hal Roach Studios, Inc. v. Richard Feiner &*

14  *Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990)). "The standard applied on a Rule 12(c) motion is

15  essentially the same as that applied on a Rule 12(b)(6) motion for failure to state a claim: 'the

16  allegations of the non-moving party must be accepted as true, while the allegations of the moving

17  party which have been denied are assumed to be false.'" *Id.* (quoting *Hal Roach Studios*, 896

18  F.2d at 1550). The complaint "must contain sufficient factual matter, accepted as true, to 'state a

19  claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

20  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the

21  plaintiff pleads factual content that allows the court to draft the reasonable inference that the

22

23

24  [3] The Port does not move to dismiss Plaintiff's claims for discrimination under Title VII or procedural due process. *See* Dkt. No. 28.

defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The Court is not required to accept as true mere legal conclusions unsupported by alleged facts. *Id.*

"When considering a motion for judgment on the pleadings, a court may consider material which is properly submitted as part of the complaint without converting the motion into a motion for summary judgment." *Point Ruston*, 658 F. Supp. 2d at 1273 (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). Documents which are not physically attached to the complaint may still be considered if their "authenticity . . . is not contested" and "the plaintiff's complaint necessarily relies" on them. *Id.* (quoting *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruling on other grounds recognized by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2022)). Additionally, pursuant to Federal Rule of Evidence 201, "a court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment." *Id.* at 1274 (citing *Mack v. S. Bay Beer Distrib., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991)). A court may not take judicial notice of any fact that is subject to reasonable dispute. Fed. R. Evid. 201(b); *see also Point Ruston*, 658 F. Supp. 2d at 1274.

### III.   DISCUSSION

#### A.   Claims One and Two: Violations of the First Amendment

Plaintiff asserts two claims for violations of the First Amendment. First, she alleges that Defendant burdened Plaintiff's free exercise of religion in violation of the First Amendment Dkt. No. 24 ¶¶ 135–51. Second, she alleges that Defendant took adverse employment action in retaliation against Plaintiff in violation of the First Amendment. Dkt. No. 24 ¶¶ 152–62. Defendant moves for judgment on both of these claims pursuant to Rule 12(c). Dkt. No. 28 at 6.

1       **1.**      **Claim One: Violation of the Free Exercise Clause**

2       The Free Exercise Clause "protect[s] religious observers against unequal treatment"

3 based on their "religious status" by barring laws "prohibiting the free exercise" of religion.

4 *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 458 (2017) (alteration in

5 original) (quoting *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 533 (1993));

6 U.S. Const. amend. I. However, the Free Exercise Clause "does not relieve an individual of the

7 obligation to comply with a valid and neutral law of general applicability on the ground that the

8 law proscribes (or prescribes) conduct that [her] religion prescribes (or proscribes)." *Cedar Park*

9 *Assembly of God of Kirkland, Wash. v. Kreidler*, 683 F. Supp. 3d 1172, 1180–81 (W.D. Wash.

10 2023) (quoting *Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 879 (1990),

11 *superseded by statute on other grounds*, Religious Freedom Restoration Act of 1993, 42 U.S.C.

12 §§ 2000bb *et seq.*).

13       In evaluating a Free Exercise claim, the initial inquiry is whether a challenged law is

14 "neutral or generally applicable." *See Cedar Park Assembly*, 683 F. Supp. 3d at 1181.

15 "Neutrality and general applicability are interrelated, and . . . failure to satisfy one requirement is

16 a likely indication that the other has not been satisfied." *Id.* (quoting *Lukumi*, 508 U.S. at 531).

17 While "[a] law that burdens religion and which is not neutral or generally applicable must

18 survive strict scrutiny—i.e., the burden on religion 'must be justified by a compelling

19 governmental interest and must be narrowly tailored to advance that interest'"—if a law is

20 neutral and generally applicable, it "need only survive rational basis review." *Id.* (first quoting

21 *Lukumi*, 508 U.S. at 531–32; then citing *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1075–76

22 (9th Cir. 2015)).

23       Plaintiff alleges that Defendant's requirements that she wear a face mask and "submit to

24 coerced injection of experimental gene therapies" burdened her free exercise of religion. Dkt.

No. 24 ¶¶ 139–40. Defendant argues that both its masking and vaccination requirements are facially neutral and survive rational basis review. *See* Dkt. No. 28 at 6.

       **a.**    ***Whether Defendant's Masking and Vaccination Policies Are Neutral or Generally Applicable***

       **(1)**    **Neutrality**

"A law lacks facial neutrality if it refers to a religious practice without a secular meaning discernable from the language or context." *Stormans*, 794 F.3d at 1076 (quoting *Lukumi*, 508 U.S. at 533). "[I]f the object of a law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral[.]" *Id.* (quoting *Lukumi*, 508 U.S. at 533). Other "COVID-19 vaccination requirements have been held to be facially neutral when they apply to an entire category (i.e., all employees) and 'do[] not single out employees who decline vaccination on religious grounds.'" *Schmidt v. City of Pasadena*, No. C21-8769, 2023 WL 4291440, at *13 (C.D. Cal. Mar. 8, 2023) (quoting *UnifySCC v. Cody*, No. C22-1019, 2022 WL 2357068 (N.D. Cal. June 30, 2022)); *see also We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 281–84 (2d Cir. 2021); *Bacon v. Woodward*, No. C21-296, 2021 WL 5183059, at *4–5 (E.D. Wash. Nov. 8, 2021). "The existence of religious exemptions does not undermine facial neutrality." *UnifySCC*, 2022 WL 2357068, at *6.

On its face, Defendant's masking and vaccination policies make no reference to any religious practice, conduct, belief, or motivation. *See* Dkt. No. 24 ¶ 24 (masking policy); *id.* at 72 (Appx. O-1) (vaccination policy); Dkt. No. 29-1 at 15–29 (HR-32 Face Covering Policy or "HR-32"); *id.* at 2–13 (HR-34). Both policies apply to all Port employees. Dkt. No. 29-1 at 2 ("This policy [(HR-34)] applies to all Port of Seattle employees . . . ."); *id.* at 15 ("[T]he Port of Seattle requires employees to don face coverings . . . in all Port facilities . . . ."). Both policies treat religion differently only in that they offer exemptions from the masking and vaccination

1  requirements for those with sincerely held religious beliefs. This does not show the absence of

2  neutrality. *See Schmidt*, 2023 WL 4291440, at *13; *UnifySCC*, 2022 WL 2357068, at *6. For

3  these reasons, the Court concludes that Defendant's masking and vaccination policies are facially

4  neutral.

### (2)  General Applicability

6  "A law is not generally applicable if the record before the court 'compels the conclusion'

7  that suppression of religion or religious practice is the object of the law at issue." *Bacon*, 2021

8  WL 5183059, at *4 (quoting *Lukumi*, 508 U.S. at 534). Further, "[a] government policy will fail

9  the general applicability requirement if it 'prohibits religious conduct while permitting secular

10  conduct that undermines the government's asserted interests in a similar way,' or if it provides 'a

11  mechanism for individualized exemptions.'" *Kennedy v. Bremerton School Dist.*, 597 U.S. 507,

12  526 (2022) (quoting *Fulton v. City of Philadelphia, Pa.*, 593 U.S. 522, 534 (2021)). For example,

13  in *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, the City of Hialeah adopted several ordinances

14  prohibiting animal sacrifice, a practice of the Santeria faith. 508 U.S. at 524–28. The city

15  claimed that the ordinances were necessary to protect public health, which was "threatened by

16  the disposal of animal carcasses in open public places," but the ordinances did not regulate

17  hunters' disposal of their kills or improper garbage disposal by restaurants, which posed similar

18  hazards. *Id.* at 544–45. "The Court concluded that this and other forms or underinclusiveness

19  meant that the ordinances were not generally applicable." *Fulton*, 593 U.S. at 534 (citing

20  *Lukumi*, 508 U.S. at 545–46).

21  Here, the object of Defendant's masking and vaccination requirements are clear: to

22  "safeguard the health and well-being of [the Port's] employees and their families, the

23  community, visitors, and others who spend time in [Port] facilities from COVID-19[.]" Dkt.

24  No. 29-1 at 2 (HR-34); *see also id.* at 17 (HR-32). Both of these requirements apply with equal

force to all Port employees. *Id.* at 2, 15. Thus, there is no discriminatory animus or objective. *See, e.g.*, *Bacon*, 2021 WL 5183059, at *4 (finding no discriminatory animus or objective where object of vaccination requirement was to slow the spread of COVID-19 and applied with equal force to all city-employed firefighters regardless of religious affiliation). Further, these policies do not prohibit religious conduct while permitting secular conduct that undermines the objective of preventing the spread of COVID-19 in a similar way. In fact, HR-34 in particular expressly accommodates employees with religious objections by allowing them to seek an exemption from the vaccination policy. *See* Dkt. No. 29-1 at 4; *see also Bacon*, 2021 WL 5183059, at *4 ("If anything, the City's vaccine requirement encourages religious practice because there are no other recognized exemptions, such as political or personal objections."); *UnifySCC*, 2022 WL 2357068, at *7 ("[T]he Mandate expressly accommodates employees with religious objections by allowing them to seek an exemption from the Mandate."). Therefore, Defendant's masking and vaccination policies are also generally applicable.

### b.    *Whether Defendant's Masking and Vaccination Policies Survive Rational Basis Review*

Because Defendant's masking and vaccination policies are both facially neutral and generally applicable, they are subject to rational basis review. *See Stormans*, 794 F.3d at 1084 (citing *Guam v. Guerrero*, 290 F.3d 1210, 1215 (9th Cir. 2002)). "Under rational basis review, we must uphold the [policies] if they are rationally related to a legitimate governmental purpose." *Id.* (citing *Gadda v. State Bar of Cal.*, 511 F.3d 933, 938 (9th Cir. 2007)). Plaintiff has "the burden to negat[e] every conceivable basis which might support [the rules.]" *Id.* (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993)).

Both HR-32 and HR-34 are rationally related to Defendant's legitimate interest in ensuring that its employees are protected from the transmission of COVID-19. The Supreme

Court, the Ninth Circuit, and courts within the Ninth Circuit as well as across the country have

consistently held that the intent to safeguard individuals from COVID-19 is a legitimate interest.

*See Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 18 (2020) ("Stemming the

spread of COVID-19 is unquestionably a compelling interest . . . ."); *Pilz v. Inslee*, No. C22-

35508, 2023 WL 8866565, at *2 (9th Cir. Dec. 22, 2023) (same); *Slidewaters LLC v. Wash. State

Dep't of Labor & Indus.*, 4 F.4th 747, 758 (9th Cir. 2021) ("There is a legitimate state interest in

preventing the spread of COVID-19, a deadly contagious disease."); *Burcham v. City of Los

Angeles*, 562 F. Supp. 3d 694, 707 (C.D. Cal. 2022) ("[T]here is no question that the city's

interest in preventing the spread of COVID-19 is not merely legitimate, it is 'unquestionably . . .

compelling.'" (quoting *Roman Catholic Diocese*, 592 U.S. at 18)); *Gunter v. N. Wasco Cnty.

Sch. Dist. Bd. of Educ.*, 577 F. Supp. 3d 1141, 1158 (D. Or. 2021) (finding that school board had

legitimate interest in preventing the spread of COVID-19); *Altman v. Cnty. of Santa Clara*, 464

F. Supp. 3d 1106 (N.D. Cal. 2020) ("Plaintiffs concede that 'Defendants have a legitimate

interest in reducing the population's exposure to COVID-19,' a pandemic that is 'serious in

nature.'"); *see also Does 1-6 v. Mills*, 16 F.4th 20, 32 (1st Cir. 2021) ("Few interests are more

compelling than protecting public health against a deadly virus."); *Norris v. Stanley*, 73 F.4th

431, 436 (6th Cir. 2023) ("Public health and safety easily fall within the state's legitimate

interests.").

       Courts have found the requirement for employees to wear face masks to protect against

COVID-19 to be rationally related to both the interest of safeguarding employee and public

health and preventing the spread of COVID-19. *See Health Freedom Def. Fund, Inc. v. City of

Hailey, Idaho*, 590 F. Supp. 3d 1253, 1268 (D. Idaho 2022) ("Ultimately, there can be little

doubt in this case that the City's mask mandate is rationally related to a legitimate government

interest—that of the health and safety of its citizens."); *Branch-Noto v. Sisolak*, 576 F. Supp. 3d

790, 802 (D. Nev. 2021) ("Because it cannot be said that the masking policies are not rationally

related to the legitimate government interest of slowing the spread of COVID-19, the parental-

rights claim is without merit."); *Gunter*, 577 F. Supp. 3d at 1158 ("The persons that OHA's mask

requirement states it is intended to protect—unvaccinated persons and those with underlying

health conditions—may be staff at the schools, other students, or family members of students

who might become exposed to the COVID-19 virus from classmates and then bring the virus

home to the vulnerable family member."); *McGuire v. Roseville Joint Union High Sch. Dist.*, No.

C22-0125, 2023 WL 3854005, at *5 (E.D. Cal. June 6, 2023) ("Federal courts have consistently

held that both distance learning and mask requirements implemented in response to the COVID-

19 pandemic satisfy this deferential standard, particularly where, as here, the requirements were

implemented pursuant to public health directives of state and national authorities."); *see also*

*Stepien v. Murphy*, 574 F. Supp. 3d 229, 239 (D.N.J. 2021) ("Defendants' arguments [in support

of mask mandates] easily clear the relatively low bar of rational basis scrutiny."); *Oakes v.*

*Collier Cnty.*, 515 F. Supp. 3d 1202, 1209 (M.D. Fla. 2021) ("As a general matter, a mask

mandate is rationally related to the County's legitimate governmental interest. The Stores don't

challenge this conclusion much. And for good reason. It would be difficult to contend with a

straight face that a mask requirement does not bear a rational relation to protecting people's

health and preventing the spread of COVID-19.").

Similarly, requiring employees to be vaccinated against COVID-19 is rationally related to

both the interest of safeguarding employee and public health and preventing the spread of

COVID-19. *See Chavez v. San Francisco Bay Area Rapid Transit Dist.*, No. C22-6119, 2024

WL 3334741, at *9 (N.D. Cal. Mar. 18, 2024) ("[R]equiring employees to be vaccinated is

rationally related to that interest because data show that approved COVID-19 vaccines

drastically reduce the chances of contracting and spreading the virus." (quoting *UnifySCC*, 2022

WL 2357068, at *8)); *Pilz*, 2023 WL 8866565, at *2 ("Because requiring vaccination of state agency and healthcare workers is rationally related to [the goal of stemming the spread of COVID-19], the Proclamation survives Plaintiffs' constitutional challenge."); *Johnson v. Brown*, 567 F. Supp. 3d 1230, 1252 (D. Or. 2021) ("The Vaccine Orders are rationally related to Defendants' interests in slowing the spread of COVID-19, protecting Oregon's citizens, protecting children and teachers in schools, and preserving healthcare resources and protecting patients."); *Wise v. Inslee*, No. C21-0288, 2021 WL 4951571, at *3 (E.D. Wash. Oct. 25, 2021) ("The Proclamation is rationally related to that interest because it is based on overwhelming evidence that the vaccines are safe and effective, and increasing vaccination rates among those employees who come into regular contact with vulnerable populations (e.g., those who are immunocompromised, who cannot get vaccinated—like children under age 12, and those who must interact with public employees—like prisoners) is a rational action to reduce the spread of COVID-19."); *see also Spivack v. City of Philadelphia*, 109 F.4th 158, 178 (3d Cir. 2024) ("And both policies are rationally related to those objectives because they ensure that a greater proportion of the office is vaccinated and therefore less likely to contract and spread the virus, experience severe illness, or miss work."); *Norris*, 73 F.4th at 436 ("Instead, to pass rational basis review, it is sufficient that MSU could rationally believe that requiring the vaccine for naturally immune individuals would further combat COVID-19 on its campus.").

Accordingly, Plaintiff's free exercise claim is DISMISSED with prejudice.

## 2.    Claim Two: Retaliation in Violation of the First Amendment

To prevail on a First Amendment retaliation claim, a plaintiff must show: "(1) that he or she engaged in protected speech; (2) that the employer took 'adverse employment action'; and (3) that his or her speech was a 'substantial or motivating' factor for the adverse employment

1   action." *Turner v. City & Cnty. of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015) (quoting

2   *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003)).

3          "Whether a public employee or contractor's expressive conduct addresses a matter of

4   public concern is a question of law." *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 924

5   (9th Cir. 2004) (citing *Connick v. Myers*, 461 U.S. 138, 148 n.7 (1983)). "This determination is

6   made in light of 'the content, form, and context' of the expressive conduct 'as revealed by the

7   whole record.'" *Id.* (quoting *Connick*, 461 U.S. at 147–48). A government employee, such as

8   Plaintiff, engages in speech that is protected under the First Amendment if she "spoke as a

9   citizen on a matter of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) (citing

10  *Pickering v. Bd. of Ed. Of Tp. High School Dist. 205, Will Cnty., Ill.*, 391 U.S. 563, 568 (1968)

11  Where speech "concerns issues about which information is needed or appropriate to enable the

12  members of society to make informed decisions about the operation of their government," it is

13  entitled to the highest degree of First Amendment protection. *Alpha Energy Savers*, 381 F.3d at

14  924 (quoting *Coszalter*, 320 F.3d at 973). "In contrast, 'speech that deals with individual

15  personnel disputes and grievances and that would be of no relevance to the public's evaluation of

16  the performance of government agencies, is generally not of public concern.'" *Id.* (quoting

17  *Coszalter*, 320 F.3d at 973).

18          Plaintiff here contends that her request to Port Commissioners to "discuss the vaccine

19  policy and its inequity on behalf of the many, not just herself" was protected activity. Dkt.

20  No. 30 at 13–14. On November 8, 2021, Plaintiff emailed Port Commissioners requesting an

21  "opportunity to chat with any or all of you about the direction the Port has chosen to move with

22  the vaccine mandate," stating that she and other employees felt that Defendant was "abandoning

23  [them] and unwilling to accommodate [their] values and beliefs." Dkt. No. 24 at 61 (Appx. H-1).

24  Defendant argues that Plaintiff's speech was not on a public concern, as "she merely spoke to her

1  supervisors and Port officials to convince the Port to accommodate herself and other employees

2  who objected to vaccination or masking requirements." Dkt. No. 28 at 14.

3        While Plaintiff's speech undoubtably concerned more than just her personally, the form

4  and context of her speech weighs strongly against finding that First Amendment protection is

5  warranted. As the Ninth Circuit noted in *Turner*, "an employee's motivation is relevant to the

6  public-concern inquiry . . . : [W]hy did the employee speak (as best as we can tell)? Does the

7  speech 'seek to bring to light actual or potential wrongdoing or breach of public trust,' or is it

8  animated instead by 'dissatisfaction' with one's employment situation?" *Turner*, 788 F.3d at

9  1210 (quoting *Desrochers v. City of San Bernardino*, 572 F.3d 703, 715 (9th Cir. 2009)) (internal

10 citations omitted). In *Turner*, the plaintiff, a former temporary employee of the City and County

11 of San Francisco, contended that he was retaliated against for speaking out against what he

12 viewed as unlawful hiring and use of temporary exempt employees at staff meetings, union

13 meetings, and meetings with city officials. *Id.* at 1211. The court held that "although Turner's

14 complaint ostensibly could invoke a matter of public concern, as it discusses civil service rules

15 prescribed by local law, . . . Plaintiff's voiced complaint was focused on and driven by his

16 internal grievance." *Id.* (internal citations omitted). Similarly, here, while the content of

17 Plaintiff's speech concerned other Port employees and vaccination against COVID-19—arguably

18 a matter of public concern—her speech was focused on and driven by her personal internal

19 grievance against Defendant's internal employment policy of requiring employees to be

20 vaccinated. The speech cited by Plaintiff was made in the context of her employment to her Port

21 supervisors and was not disseminated into a public forum, further supporting this determination.

22 *See* Dkt. No. 24 at 61 (Appx. H-1), 62 (Appx. I-1).

23        Additionally, Plaintiff must show that "her speech was a 'substantial or motivating'

24 factor for the adverse employment action." *Turner*, 788 F.3d at 1210. Plaintiff cannot do so here.

1   Plaintiff's own allegations show that she was terminated because she refused to obtain a COVID

2   vaccine, not because of her speech. *See* Dkt. No. 24 ¶¶ 61, 63, 65–66; *id.* at 65–66 (Appx. K),

3   67–68 (Appx. L), 72–73 (Appx. O). The allegations in Plaintiff's complaint fail to indicate that

4   Plaintiff was terminated because of her speech itself and, therefore, she has not alleged that her

5   speech played a substantial role in Defendant's decision to terminate her. *See Monroe El v.*

6   *Lawrence*, No. C23-2265, 2024 WL 836386, at *6 (N.D. Ga. Jan. 17, 2024) (finding that

7   plaintiff's own allegations showed that she was terminated because "she refused to obtain a

8   COVID vaccine, not because of her speech"), *report and recommendation adopted*, No. C23-

9   2265, 2024 WL 836385 (N.D. Ga. Feb. 8, 2024).

10          Accordingly, Plaintiff's First Amendment retaliation claim is DISMISSED with prejudice.

11   **B.      Claim Three: Violation of the Americans with Disabilities Act ("ADA")**

12          Plaintiff asserts a claim for failure to reasonably accommodate under the ADA, alleging

13   that Defendant's masking policy "resulted in substantial limitations to Plaintiff's breathing" due

14   to her asthma. Dkt. No. 24 ¶ 167; *see also id.* ¶¶ 163–78. Plaintiff claims that she "was denied

15   reasonable accommodation of not being coerced to wear an experimental medical device (face

16   mask) while at work," and that Defendant discriminated against her by failing to provide her

17   with reasonable accommodation under the ADA. Dkt. No. 24 ¶¶ 174, 176. Defendant moves for

18   dismissal of Plaintiff's claim under the ADA, arguing that Plaintiff has not satisfied the

19   administrative exhaustion requirement. Dkt. No. 28 at 15.

20          "An individual plaintiff must first file a timely EEOC complaint against the allegedly

21   discriminatory party before bringing an ADA suit in federal court." *Josephs v. Pac. Bell*, 443

22   F.3d 1050, 1061 (9th Cir. 2006) (citing *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir.

23   1994)). "Because Washington is a 'deferral state,' a plaintiff must file his EEOC charge within

24   300 days of the allegedly offending conduct." 42 U.S.C. §§ 2000e-5(e)(1), 12117; *see also*

*Pandya v. Bank of Am.*, No. C23-1974, 2024 WL 519178, at *5 (W.D. Wash. Feb. 9, 2024). This means that the plaintiff must file a charge with the EEOC within 300 days of the claimed event of discrimination and obtain a right-to-sue letter before bringing civil claims. *See Josephs*, 443 F.3d at 1061; *Pandya*, 2024 WL 519178, at *5. The filing requirement "is subject to waiver, estoppel, and equitable tolling." *Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1009 (9th Cir. 2011) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)).

Plaintiff admits that she was "unaware of the option to file with the ADA regarding the imposition of the mask despite her medical condition," but argues that because she raised the issue of her adverse health consequences with Defendant, her claim should survive. Dkt. No. 30 at 15. However, Plaintiff concedes that she did not file an EEOC complaint regarding the allegedly discriminatory conduct. *Id.* This is fatal to her claim. *See, e.g.*, *Studymire v. Bright Horizons Children's Ctr., Inc.*, No. C09-1122, 2010 WL 653459, at *3 (D. Ariz. Feb. 22, 2010) (holding that plaintiff had not exhausted administrative remedies where she filed a charge with the EEOC for job discrimination but attempted to bring an ADA claim for related retaliation).

Plaintiff alleges that she was terminated by Defendant in November 2021. Dkt. No. 24 ¶ 79. Plaintiff does not allege that additional discriminatory conduct occurred within the 300-day period; thus, the date of her termination began the 300-day period within which Plaintiff was required to file her complaint with the EEOC. *See Leptich v. City College of SF*, 134 F.3d 378, 1998 WL 22037, at *2 (9th Cir. Jan. 15, 1998). As Plaintiff did not file an EEOC complaint alleging that Defendant's masking policy violated the ADA during that time, her action under the ADA is barred. *See id.*

Accordingly, Plaintiff's claim for violation of the ADA is DISMISSED with prejudice.

1    **C.      Claim Five: Breach of Contract**

2         Plaintiff asserts a claim for breach of contract, alleging that Defendant violated the

3    employment contract she had with Defendant through her union by terminating Plaintiff without

4    just cause. Dkt. No. 24 ¶¶ 189–98. Defendant argues that Plaintiff's breach of contract claim

5    should be dismissed for failure to plead exhaustion of the administrative remedies available to

6    Plaintiff under the collective bargaining agreement between Defendant and Plaintiff's union.

7    Dkt. No. 28 at 16.

8         Plaintiff alleges that on "the date of Separation, there was a contract between Plaintiff's

9    Carpenters Union Local #30 and Port of Seattle"—also known as a collective bargaining

10   agreement ("CBA"). Dkt. No. 24 ¶ 79. "Collective-bargaining agreements commonly provide

11   grievance procedures to settle disputes . . . with respect to the interpretation and application of

12   the agreement and require binding arbitration for unsettled grievances." *United Paperworkers*

13   *Intern. Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987). "Prior to bringing suit, an

14   employee seeking to vindicate personal rights under a collective bargaining agreement must first

15   attempt to exhaust any mandatory or exclusive grievance procedures provided in the agreement."

16   *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 985–86 (9th Cir. 2007) (citing *United*

17   *Paperworkers Intern. Union*, 484 U.S. at 37 ("The courts have jurisdiction to enforce collective-

18   bargaining contracts; but where the contract provides grievance and arbitration procedures, those

19   procedures must first be exhausted and courts must order resort to the private settlement

20   mechanisms without dealing with the merits of the dispute.")). "Thus, in the ordinary case, an

21   employee's failure to exhaust contractually mandated procedures precludes judicial relief for

22   breach of the collective bargaining agreement and related claims." *Id.* at 986.

23        However, an exception to the general requirement of exhaustion exists "where the

24   employee demonstrates that 'the union representing the employee in the grievance/arbitration

procedure [has acted] in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation,'" or where "the employee has been prevented from exhausting his or her contractual remedy by his or her union's wrongful refusal to process the grievance." *Id.* at 986 (alteration in original) (quoting *DelCostello v. Int'l Broth. of Teamsters*, 462 U.S. 151, 164 (1983)), 988 (citing *Vaca v. Sipes*, 386 U.S. 171, 185 (1967)); *see also Lew v. Seattle Sch. Dist. No. 1*, 47 Wn. App. 575, 578, 736 P.2d 690 (1987) (citing *Vaca*, 386 U.S. at 184 n.9).

Defendant argues that in this case, Plaintiff's failure to allege that the CBA lacked procedures for resolving disputes and that she exhausted all remedies under the CBA is fatal to Plaintiff's claim for breach of contract. Dkt. No. 20 at 16–17. Plaintiff contends in her Opposition that she "was told that the Union would not pursue a grievance for the Wrongful Termination nor would pursue the matter regarding the shortage of Termination payout." Dkt. No. 30 at 16. But these allegations do not appear in the Complaint (*see generally* Dkt. Nos. 24, 1-1), and Plaintiff cannot now convert the action into a hybrid breach of contract/fair representation claim by raising the argument for the first time in opposition to a motion for judgment on the pleadings. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." (emphasis in original)); *see also* 2 Moore's Fed. Prac. - Civil, § 12.34[2] (Matthew Bender 2024) ("The court may not . . . take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a).").

Further, the Court notes that because Plaintiff did not incorporate the CBA into the Complaint or attach it as an exhibit to the Complaint, it cannot properly consider it on this

Motion. *See generally* Dkt. No. 24. Plaintiff has not identified any contractual provisions that she alleges Defendant to be in breach of—she claims that "Defendant did not perform its contractual obligations" (*see* Dkt. No. 24 ¶¶ 192–94), but does not identify any specific provisions that she asserts Defendant did not perform or is in breach of. Without this information, Plaintiff cannot maintain her breach of contract claim. *See Lowry v. EMC Mortg. Corp.*, 710 F. App'x 752, 752 (9th Cir. 2018) ("The district court properly dismissed the claim for breach of contract because plaintiffs failed to identify a contract provision requiring defendants to grant them a permanent loan modification . . . ."); *Siver v. CitiMortgage, Inc.*, 830 F. Supp. 2d 1194, 1200 (W.D. Wash. 2011) ("Indeed, the Sivers do not identify any contract or contract provision that CitiMortgage has breached.").

Accordingly, Plaintiff's claim for breach of contract is DISMISSED without prejudice. Plaintiff will be allowed to amend her complaint with regard to this claim if she believes she can assert facts to support it.

**D.    Claim Six: Tortious Interference with Existing Contract**

Plaintiff concedes that she is unable to pursue a claim against Defendant for tortious interference with existing contract. Dkt. No. 30 at 5. Accordingly, Plaintiff's claim for tortious interference with existing contract is DISMISSED with prejudice.

**E.    Claim Eight: Violation of the Equal Protection Clause**

Plaintiff asserts a claim for violation of the Equal Protection Clause on two bases: first, that Defendant discriminated against employees whose "beliefs proscribed wearing a face mask"; and second, that Defendant discriminated against employees whose "beliefs proscribed being injected with a Pfizer BioNTech 162b2 gene therapy [(COVID-19 vaccine)]." Dkt. No. 24 ¶¶ 231–32. Defendant argues that Plaintiff's claim fails on either basis. Dkt. No. 28 at 17–20.

"The Equal Protection Clause of the Fourteenth Amendment commands that no state shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause . . . [,] a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (citing *Washington v. Davis*, 426 U.S. 229, 239–40 (1976)). "'The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest,' but heightened standards of review apply when suspect classification like race, alienage, or national origin[] are implicated or 'when state laws impinge on personal rights protected by the Constitution.'" *Williams v. Brown*, 567 F. Supp. 3d 1213, 1227 (D. Or. 2021) (quoting *Cleburne*, 473 U.S. at 440).

### 1.      Violation of the Equal Protection Clause Based on Masking

Plaintiff's first basis for her Equal Protection Clause claim is that Defendant discriminated against employees "whose beliefs proscribed wearing a face mask" by terminating them, while employees who did wear face masks retained their positions with Defendant. Dkt. No. 24 ¶ 231. Defendant argues that Plaintiff fails to assert a claim under the Equal Protection Clause on this basis because "she does not fit within the class that allegedly had its rights violated by the Port's mask policy." Dkt. No. 28 at 19.

As Defendant points out, Plaintiff does not allege that she was terminated for an inability to wear a face mask—instead, she alleges (and her exhibits show) that she was terminated for a failure to receive a COVID-19 vaccination. Dkt. No. 24 ¶ 70; *id.* at 72–73 (Appx. O) (showing

1   that Plaintiff was terminated for "non-disciplinary reasons pursuant to HR-34 [(the Port's

2   vaccination policy)]"). Thus, Plaintiff cannot maintain a claim under the Equal Protection Clause

3   on the basis that Defendant discriminated against her by terminating her for refusing to wear a

4   face mask. *See Kivlin v. City of Bellevue*, No. C20-790, 2021 WL 5140260, at *9 (W.D. Wash.

5   Nov. 4, 2021) ("Kivlin has made no effort to allege—let alone introduce evidence—that he is a

6   member of a protected class or that Defendants acted with the intent to discriminate. On this

7   basis alone, his equal protection claim fails as a matter of law.").

8   　　　　**2.　　　　Violation of the Equal Protection Clause Based on Vaccination Status**

9   　　　　Plaintiff's next basis for her Equal Protection Clause claim is that Defendant

10  discriminated against employees whose beliefs proscribed vaccination against COVID-19. Dkt.

11  No. 24 ¶ 232. Defendant argues that this basis for Plaintiff's claim fails because Defendant's

12  vaccine policy survives rational basis review. Dkt. No. 28 at 18.

13  　　　　"[A] classification neither involving fundamental rights nor proceeding along suspect

14  lines . . . cannot run afoul of the Equal Protection Clause if there is a rational relationship

15  between the disparity of treatment and some legitimate governmental purpose." *Armour v. City

16  of Indianapolis, Ind.*, 566 U.S. 673, 680 (2012) (quoting *Heller v. Doe*, 509 U.S. 312, 319–20

17  (1993)). Courts in this District and across the country have "routinely rejected the argument that

18  vaccine mandates will trigger heightened scrutiny under the Equal Protection Clause and have

19  instead applied rational basis review." *Williams*, 567 F. Supp. 3d at 1227; *see Boysen v.

20  PeaceHealth*, No. C23-1229, 2024 WL 3888682, at *8 (D. Or. Aug. 19, 2024) ("Second, and

21  more critically, 'unvaccinated individuals do not constitute a suspect class.'" (quoting *George v.

22  Grossmont Cuyamaca Cmty. Coll. Dist. Bd. of Governors*, No. C22-0424, 2022 WL 16722357,

23  at *10 (S.D. Cal. Nov. 4, 2022))); *Schmidt v. City of Pasadena*, No. C21-8769, 2023 WL

24  4291440, at *11 (C.D. Cal. Mar. 8, 2023) ("Plaintiff has not shown that distinguishing between

vaccinated and unvaccinated individuals reflects a suspect classification, nor has he has shown that the City's vaccination policy infringes a fundamental right."); *Gold v. Sandoval*, No. C21-0480, 2021 WL 5762190, at *2 (D. Nev. Dec. 3, 2021) ("Gold alleges that the Policy treats unvaccinated individuals in a punitive way, but does not cite to any binding precedent to suggest that unvaccinated individuals constitute a suspect class." (internal citation omitted)); *Kheriaty v. Regents of Univ. of Calif.*, No. C21-1367, 2021 WL 4714664, at *7 (C.D. Cal. Sept. 29, 2021) ("Whether the class here is formulated as 'non-vaccinated individuals,' 'individuals who have previously had COVID-19,' or 'non-vaccinated individuals with immunity to COVID-19,' Kheriaty presents no authority to show that any court has found a similar classification to be suspect or quasi-suspect."); *see also McArthur v. Brabrand*, 610 F. Supp. 3d 822, 839–42 (E.D. Va. 2022) (dismissing plaintiff's equal protection claim where plaintiff failed to combat "several cases holding that unvaccinated people do not constitute a suspect class"); *Norris v. Stanley*, 567 F. Supp. 3d 818, 821 (W.D. Mich. 2021) ("[T]here is no fundamental right to decline a vaccination[.]"). Thus, Defendant's vaccination policy (HR-34) is subject to rational basis review.

Plaintiff relies on *Kadel v. Folwell*, a Middle District of North Carolina case, to support her argument. Dkt. No. 30 at 17 (citing 620 F. Supp. 3d 339 (M.D.N.C. 2022)). But *Kadel* addressed a state healthcare plan's policy excluding coverage for treatments "leading to or in connection with sex changes or modifications," and in the Fourth Circuit, "laws that discriminate based on sex or transgender status receive intermediate scrutiny." 620 F. Supp. 3d at 374. But Plaintiff has cited to no cases indicating that in the Ninth Circuit, laws or policies that discriminate based on vaccination status receive a heightened standard of scrutiny. *Kadel* is thus inapposite. As the Court has already determined that HR-34 survives rational basis review, *supra* Section III.A.1.b., Plaintiff's Equal Protection claim on this basis fails.

Plaintiff also argues in her Opposition that she challenges the disproportionate impact of Defendant's vaccination policy. Dkt. No. 30 at 17 ("Plaintiff's factual content in fact does not challenge the vaccine policy itself but rather the fact of its implementation being discriminatory and creating disproportionately disparate income on the class of employees unable to vaccinate due to their religious beliefs."). Where the challenged governmental policy is "facially neutral," "proof of disproportionate impact on an identifiable group, such as evidence of 'gross statistical disparities,' can satisfy the intent requirement where it tends to show that some invidious or discriminatory purpose underlies the policy." *The Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 703 (9th Cir. 2009) (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–66 (1977) and *Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 307–08 (1977)).

Even assuming Plaintiff has alleged gross statistical disparities, "it is the rare case where impact alone will be sufficient to invalidate a challenged government action." *Comm. Concerning Cmty. Improvement*, 583 F.3d at 703. Other factors a court should consider in determining whether there is evidence of intent or purpose to discriminate include the historical background of the decision, the sequence of events leading up to the decision, and any relevant legislative or administrative history. *Comm. Concerning Cmty. Improvement*, 583 F.3d at 703. "If there is no evidence of intentional discrimination, then the court assumes that the challenged actions were not based on discrimination and must inquire only whether the actions were rationally related to a legitimate governmental interest." *Id.* (citing *Hisp. Taco Vendors of Wash. v. City of Pasco*, 994 F.2d 676, 680 (9th Cir. 1993)).

Here, Plaintiff has not alleged facts that support a claim that Defendant implemented its vaccination policy with the intent or purpose of discriminating against employees who objected to vaccination based on religion. *See generally* Dkt. No. 24. To the contrary, the intent of HR-

34—as articulated by the exhibits Plaintiff included with her Complaint—was to "safeguard the health and well-being of employees and their families, the community, visitor, and others who spend time in Port facilities from COVID-19's infectious conditions that can be reduced through an effective employee vaccination requirement program." Dkt. No. 24 at 64 (Appx. J-2). Additionally, the exhibits indicate that Defendant provided a religious exemption to its vaccination policy, undercutting Plaintiff's argument that Defendant's intent was to discriminate against individuals who objected to vaccination based on their religion. *Id.* at 56 (Appx. F-1). For these reasons, the Court finds that Defendant's intent was not based on discrimination and again finds that the policy is rationally related to a legitimate governmental interest.

Accordingly, Plaintiff's Equal Protection claim is DISMISSED with prejudice.

**F.      Claim Nine: Conspiracy to Obstruct Justice**

Plaintiff asserts a claim for conspiracy to obstruct justice under 42 U.S.C. § 1985(2). Dkt. No. 24 ¶¶ 238–43. She alleges that "Defendant and its employees and representatives . . . . conspired for the purposes of impeding, hindering, obstructing, or defeating, in any manner, the laws of Washington and the due course of justice, with intent to deny Plaintiff and her class the equal protection of the laws, or to injury Plaintiff or her property for lawfully enforcing, or attempting to enforce, the right of Plaintiff's class to the equal protection of the laws." *Id.* ¶¶ 241–42. Defendant argues that Plaintiff fails to state a claim under either the first or second clauses of Section 1985(2) because her allegations "have nothing to do with deterring testimony in the federal courts by force or intimidation," and because she "fails to allege that she is a member of a suspect of quasi-suspect class and that the Port's actions were motivated by class-based invidiously discriminatory animus." Dkt. No. 28 at 23.

Section 1985(2) contains two causes of action. "The first clause of [S]ection 1985(2) concerns conspiracy to obstruct justice in the federal courts, or to intimidate a party, witness or

juror in connection therewith." *Herrick v. Strong*, No. C15-5779, 2016 WL 4755683, at \*17

(W.D. Wash. Aug. 22, 2016) (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.3 (9th Cir. 1985)).

"The second clause of [Section] 1985(2) provides a cause of action: if two or more persons

conspire for the purpose of impeding . . . the due course of justice in any State or Territory, with

intent to deny to any citizen the equal protection of the laws . . . ." *Id.* (quoting 42

U.S.C. § 1985(2)). "To state a claim under [Section] 1985(2)'s second clause, a plaintiff must

allege he is a member of a class which suffers from invidious discrimination and the defendant's

acts were motivated by animus towards that class." *Id.* (citing *Bretz*, 773 F.2d at 1028).

       Plaintiff does not state a claim under the first clause of Section 1985(2) because she does

not assert any federal interest or involvement with the alleged conspiracy. Dkt. No. 24 ¶¶ 238–

43; Dkt. No. 30 at 21 ("Plaintiff has clearly alleged that *officials of the Port, including CEO*

*Metruck, Port commissioners, Health and Safety Senior Manager Theresa Cummings, HR*

*Director Katy Gerard, and others*, conspired to intimidate the Plaintiff and obstruct justice by

enforcing the vaccination and mask policies in a way that violated the Plaintiff's rights."

(emphasis added)); *see also Bretz*, 773 F.2d at 1028 (noting that claim under Section 1985(2)

could not lie under the first clause where plaintiff alleged conspiracy by city police officers).

       Thus, Plaintiff's Section 1985(2) claim must lie under the second clause. Plaintiff argues

that Defendant "laid the groundwork to create a disparate class of people[,] 'the unvaccinated,'

and conspired to eliminate those who would not comply with their vaccine policy from their

workforce." Dkt. No. 30 at 21. However, as the Court has previously discussed, *see supra*

Sections III.A.1.a. & III.E.2., Plaintiff has failed to allege that she is a member of a suspect or

quasi-suspect class on the basis of her vaccination status, or that Defendant's vaccination policy

was motivated by class-based invidiously discriminatory animus. For these reasons, Plaintiff's

claim under the second clause of Section 1985(2) fails. *See Bretz*, 773 F.2d at 1029–30

(dismissing Section 1985(2) claim because plaintiff made no allegations of class-based animus as required for the statement of a claim under the second clause).

Accordingly, Plaintiff's claim for conspiracy to obstruct justice is DISMISSED with prejudice.

**G.      Claim Ten: Conspiracy to Deprive Rights**

Plaintiff asserts a claim for conspiracy to deprive rights under 42 U.S.C. §§ 1983 and 1985(3). Dkt. No. 24 ¶¶ 244–50. She alleges that "Defendant and its employees and representatives, because of their invidious discriminatory animus towards Plaintiff's class, willfully, maliciously, recklessly, and with callous indifference, conspired for the purpose of depriving . . . Plaintiff's class of the equal protection of the laws." *Id.* ¶ 248. Defendant argues that Plaintiff's claim must be dismissed because Plaintiff has failed to identify a legally protected right or a class-based discriminatory animus, and because she has not alleged facts sufficient to support the existence of a conspiracy. Dkt. No. 28 at 20–21.

"To bring a cause of action successfully under [Section] 1985(3), a plaintiff must allege and prove four elements:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."

*Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (quoting *United Broth. of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 828–29 (1983)). Additionally, the second element requires that "in addition to identifying a legally protected right, a plaintiff must demonstrate a deprivation of that right motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Id.* (quoting *Griffith*

*v. Breckenridge*, 403 U.S. 88, 102 (1971)). Generally, the rule in the Ninth Circuit is that Section 1985(3) is extended beyond race only where "the class in question can show that there has been a governmental determination that its members 'require and warrant special federal assistance in protecting their civil rights.'" *Schultz v. Sundberg*, 759 F.2d 714, 718 (9th Cir. 1985) (quoting *DeSantis v. Pac. Tel. & Tel. Co.*, 608 F.2d 327, 333 (9th Cir. 1979)); *see also Sever*, 978 F.2d at 1536. This means that courts must have designated the class in question "a suspect or quasi-suspect classification requiring more exacting scrutiny," or that Congress has specifically "indicated through legislation that the class required special protection." *Server*, 978 F.2d at 1536 (quoting *Schultz*, 759 F.2d at 718).

As the Court has previously discussed, the allegations in Plaintiff's complaint do not indicate that Defendant's treatment of vaccinated and masked employees differently from unvaccinated and unmasked employees was motivated by racial animosity or the type of "class-based invidiously discriminatory animus" required by Section 1985(3). *See supra* Sections III.A.1.a. & III.E.2; *see also Sever*, 978 F.2d at 1536.

Accordingly, Plaintiff's claim for conspiracy to deprive rights is DISMISSED with prejudice.

## IV.   CONCLUSION

Accordingly, the Court GRANTS Defendant's motion to dismiss. Dkt. No. 28. Plaintiff's claims for violations of the First Amendment, violation of the Americans with Disabilities Act, tortious interference with existing contract, violations of the Equal Protection Clause, conspiracy to obstruct justice, and conspiracy to deprive rights are DISMISSED with prejudice. Plaintiff's claim for breach of contract is DISMISSED without prejudice. Should Plaintiff wish to file an Amended Complaint to plead additional facts regarding her breach of contract claim only, she

1    SHALL file her amended complaint within **thirty (30) days** of this Order or on or before **Friday,**

2    **October 25, 2024**.

3          Dated this 25th day of September 2024.

4

5                                                     Tana Lin
                                                     United States District Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24